IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUN OWNERS OF AMERICA, INC.

     Plaintiff,

       v.

U.S. DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 19-03135-TNM

## FIRST DECLARATION OF JOSEPH E. BENDER, JR

I, Joseph E. Bender, Jr., declare as follows:

     1.     I am currently serving as the Acting Section Chief (A/SC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I have served in this capacity since March 6, 2023. When not serving as the A/SC, I am an Assistant Section Chief (ASC) in RIDS and have served in that position since December 2020. I joined the FBI in October 2003, and prior to my current position, I was the Acting ASC in RIDS from June 2020 to December 2020; Unit Chief, RIDS National Security Unit, from January 2017 to June 2020; and an Assistant General Counsel (2003-2006) and Unit Chief (2006-2017), FBI Office of the General Counsel (OGC), National Security and Cyber Law Branch. In those capacities, I provided legal support to operational units of the FBI's National Security Branch. Prior to my joining the FBI, I served as a trial attorney in the U.S. Department of Justice, Tax Division, Southern Criminal Enforcement

Section. In that role, I participated in federal criminal enforcement prosecutions. I am an attorney licensed in North Carolina and the District of Columbia.

2.      In my official capacity as A/SC of RIDS, I supervise approximately 238 FBI employees, supported by approximately 91 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA) as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act (PA) of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.      Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation, seeking records pertaining to various Department of Justice (DOJ) components' websites relating to the Privacy Policy which states, "[a]lthough the primary purpose of automatically collecting this kind of information is not to track individuals who visit this site, in certain circumstances and consistent with federal law, the Department may take additional steps to identify you using this information and may share this information, including your identity

2

with other agencies." This warning appears on most DOJ components' websites, including the FBI's website.

4.    Specifically, Plaintiff's request seeks (1) records identifying the "additional steps" DOJ takes to identify some visitors; (2) records describing what additional "information" is collected; (3) records identifying the "other agencies" (including federal, state, local, and international government agencies and/or nongovernmental groups) with whom information is shared; (4) records identifying the number of individuals about whom DOJ has collected this "information"; and (5) records describing the purpose(s) for which this information is collected and used.

5.    The FBI submits this declaration in support of Defendant's motion for summary judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff's request. Part II explains the procedures used to search for responsive documents. Defendant's attorney advised the FBI, via Counsel, that only the search remained at issue. Accordingly, this declaration will provide a description of the administrative history of Plaintiff's request and will describe the search conducted to locate the requested information.

## PART I: ADMINISTRATIVE HISTORY OF REQUEST

6.    By letter dated June 11, 2019, Plaintiff submitted a FOIA request to the FOIA/PA Mail Referral Unit[1], DOJ, requesting:

    a.    records identifying the "additional steps" DOJ takes to identify some visitors;

    b.    records describing what additional "information" is collected;

---

[1]    The DOJ Mail Referral Unit routed this request to the FBI in August 2020.

c.  records identifying the "other agencies" (including federal, state, local, and international government agencies and/or nongovernmental groups) with whom information is shared;

d.  records identifying the number of individuals about whom DOJ has collected this "information"; and

e.  records describing the purpose(s) for which this information is collected and used.

**(Ex. A.)**

7.  By letter dated May 20, 2021, the FBI advised Plaintiff that it had assigned his request FOIA Request Number 1497063-000. The FBI advised Plaintiff that it reviewed 15 pages of responsive records. Of these 15 pages, the FBI withheld information on one (1) page pursuant to FOIA Exemption 7(E). Also, the FBI advised Plaintiff that he could appeal the FBI's response to the DOJ, Office of Information Policy (OIP), within ninety (90) days of the date of its letter, contact the FBI's public liaison, or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The FBI Bates-numbered all pages of its production consecutively as FBI(19-cv-3135)-1 through FBI(19-cv-3135)-15. On pages released in full or in part, these numbers are typically located at the bottom of each page. **(Ex. B.)**

## PART II: ADEQUACY OF SEARCH

### TARGETED SEARCH

8.  In response to most FOIA requests received by the FBI, the FBI conducts a search of the Central Records System (CRS). The CRS is the principal records system searched by the FBI in response to most FOIPA requests because the CRS is where the FBI indexes information about individuals, organizations, events, or other subjects of investigative interest for future retrieval. Such information would reasonably be expected to be located in the CRS by the index

search methodology. However, here the FBI determined that a search of the CRS was not possible as no subject was identified in the request that would allow an FBI employee to search the CRS indices in a manner that would likely yield responsive records because Plaintiff's request does not implicate specific individuals, organizations, events or specific subjects of investigative interest.

9.      In cases where the FBI determines that the request is not searchable in CRS indices, the FBI conducts targeted searches of the offices within the FBI reasonably likely to maintain responsive records. In such cases, the FBI also relies upon the individual offices to advise of any additional locations (such as other FBI divisions, units, etc.) that may possess responsive records.

10.      Accordingly, in this case, the FBI conducted a targeted search by reaching out to various divisions and units within the FBI who were reasonably likely to maintain records to the extent such records exist and are responsive under the FOIA. Details regarding the offices contacted by RIDS are provided below. These offices were selected as they are responsible for handling the FBI's online privacy requirements and manage the FBI.gov website including security issues. RIDS relied on these offices to identify any additional offices that were reasonably likely to maintain responsive records.

11.      RIDS contacted the Assistant General Counsel in the Privacy and Civil Liberties Unit (PCLU) for potentially responsive records to the request. RIDS provided PCLU with a copy of Plaintiff's FOIA request letter and complaint in the instant litigation to assist them in conducting a search in addition to search instructions. PCLU is responsible for providing legal counsel and advice to ensure the protection of privacy and civil liberties. After reviewing the request, PCLU responded to RIDS by providing a link to the Privacy Policy located on the

FBI.gov website. RIDS processed this Privacy Policy and released it, in full, to Plaintiff. PCLU

also provided a Privacy Policy Implementation Guide, which was released, with minor

redactions, to Plaintiff.

12.     PCLU then directed RIDS to contact the Office of Public Affair's (OPA)

FBI.gov & Internet Operations Unit (FIOU) and the Enterprise Security Operation Center

(ESOC) within the Information Technology Enterprise Services Division (ITESD). OPA is

an office whose primary functions are to inform and alert members of the public; to enhance

public trust by sharing information with the public; and to keep the FBI workforce informed

through internal communications. FIOU is the unit within OPA which manages the FBI's public

internet presence as well as the technical services and content for the fbi.gov website. ITESD

provides information technology (IT) strategic management and services including enterprise

management tools, information assurance, and vulnerability management. ESOC is a unit within

ITESD which detects security-related events by monitoring IT assets and user activities.

13.     RIDS contacted each of the two units (FIOU and ESOC) and provided general

search instructions, a copy of Plaintiff's FOIA request letter, and complaint in the instant

litigation to assist them in conducting a search.

14.     FIOU responded, on behalf of OPA, that they neither create nor maintain the

information Plaintiff requested. Furthermore, FIOU stated that no centralized database exists that

tracks requests by Special Agents (SAs) for information on users of the FBI.gov website in

response to line-item four of the request. In a subsequent communication with OPA, OPA

advised that there are data logs that record daily entries to the FBI's website, but these logs are

very voluminous, contain only general data regarding website activity, and are kept for only a

two-year period. OPA can retain these records for longer than two years, if necessary, for several

reasons: for law enforcement purposes, for specific cases, or IT management purposes. But even with these data logs, FIOU advised that there was no database to track whether information was requested by a specific SA.[2] OPA further advised the general data logs are not printed as they are very voluminous and involve an estimated billions of pages or more. FIOU directed RIDS to consult with ESOC as that unit would likely be the unit with knowledge as to whether responsive records tracking information requested by SAs were maintained.

15.     RIDS contacted ESOC, and after reviewing the request, ESOC advised RIDS that the limits of what an individual consents to when they visit FBI.gov is spelled out in the Privacy Policy on the website. ESOC advised that it was unable to search for responsive information, regarding line-item four, as it has no centralized database (or logs) of records tracking requests by FBI SAs for information on users of the FBI.gov website. They provided RIDS a negative response for any records, absent receipt of additional information to allow for searching (i.e., information identifying the name of a third-party individual subject).

16.     ESOC was contacted, again, for information responsive to this request. ESOC confirmed, again, that the request was outside the roles and responsibilities of ESOC and referred RIDS to the Insider Threat Office (InTO), which provides centralized coordination and focused support to the Insider Threat Program. InTO advised RIDS that InTO does not have any equities regarding this FOIA request and could provide no information in response to it.

17.     The FBI contacted the management team that oversees the FBI.gov website and the Internet and Operations Unit to get further clarification to answer Plaintiff's request. The management team confirmed that for any visitor to the website, no matter which webpage they

---

[2] Such information, to the extent it was maintained, would be located in an investigative file that would need to be identified by subject.

7

visit, a certain basic level of information is collected: pages visited, date/time of access, and Internet Protocol (IP) address. The Privacy Act statement on the website provides notice to visitors that this information will be collected. Within OPA, the information is used for basic web analytics for content or site improvement. The data helps OPA determine the best strategies for presenting content to the public based on the quantity and timing of visits to the website. For operational purposes, this information can be used to assist in identifying persons of interest. In accordance with FBI Policy Directive 0672D and upon request from FBI agents, OPA provides this basic level of information for analysis related to ongoing investigations. With legal authorization, agents can use the IP address to solicit internet service providers for registry and other information.

18.     OPA explained that FBI SAs, Executives, and others in the FBI can make a request via telephone, email, an internal Instant Message, or by simply walking to the office and asking for this information. There is no centralized location to request this information from the team. The personnel that are asked for this information provide a list of only IP addresses that accessed a particular FBI.gov webpage, leaving it to the FBI SA to review the list for leads.

                    FBI'S RESPONSE TO EACH ITEM OF PLAINTIFF'S REQUEST

19.     In response to item one, regarding the steps to identify FBI.gov visitors, the FBI located and processed the Privacy Policy as well as the Privacy Policy Implementation Guide provided by PCLU. These documents were released to Plaintiff and on Bates page FBI (19-cv-3135)-1 the record explains that the FBI "may take additional steps with the information collected, including steps to identify you based on this information." This information is repeated on FBI(19-cv-3135)-12. These records do not provide any further information to identify specific

additional steps taken to identify certain visitors. The records only restate that additional steps *may* be taken to establish user identity.

20.     In response to item two, the FBI located records within the Privacy Policy and Privacy Policy Implementation Guide listing the kinds of information which are collected from visitors to the FBI website. The information was provided to Plaintiff and is listed on FBI(19-cv-3135)-1 and includes the IP address, date of access, time of access, and the type of browser. Bates page FBI(19-cv-3135)-12 recapitulates this same information. The FBI did not locate records other than its Privacy Policy or Privacy Policy Implementation Guide which were responsive to line item two.

21.     In response to item three, Based on the FBI's search, the FBI did not locate records indicating a list of Other Government Agencies (OGAs) as requested in item three. As previously stated, the FBI reached out to the relevant units and divisions that handle user information collected from FBI.gov, but no records were located listing any OGAs or law enforcement entities the FBI provides information to derived from its public website.

22.     The fourth item requests records "identifying the number of individuals about whom DOJ has collected information." Plaintiff requests the number of individuals for whom FBI SAs have requested FBI.gov user information pursuant to an investigation; however, the FBI does not keep centralized records of these requests and therefore cannot search FBI.gov network traffic logs. Although general logs are accessible, logs are not kept of investigative requests as explained above. Both FIOU and ESOC confirmed they do not separately record requests by SAs in a central repository. As a result, they do not have a means to retrieve responsive records. The FBI reached out to ESOC in February 2022 and again on February 6, 2023, at Plaintiff's request to confirm that these records do not exist. The Program Lead of ESOC National Operations

confirmed that this is outside of ESOC's roles and responsibilities in the FBI and there is no central log of requests to track specific IP addresses.

23.     In response to item five, the FBI located records describing the general purposes of information collected on the FBI.gov website. These responsive records are located on Bates page FBI(19-cv-3135)-13, in which the record indicates information is collected to "identify unauthorized attempts to upload or change information," identify those who "cause damage or conduct criminal activity," and "to protect the system from unauthorized use." FBI(19-cv-3135)-1 was also deemed responsive since it notes that information is collected "in response to law enforcement requests or tips received from the public."

**CONCLUSION**

24.     The FBI conducted searches reasonably calculated to locate all records responsive to Plaintiff's FOIA request. First, the FBI reached out to the divisions and units reasonably likely to maintain potentially responsive records on multiple occasions. Second, the FBI located and processed a total of 15 pages in response to Plaintiff's request. Of these 15 pages, 14 pages were released in full, and 1 page was released in part. The FBI was able to locate and process records which were responsive to items one, two, and five of Plaintiff's request. The FBI did not locate records responsive to the specific parameters of items three and four in Plaintiff's FOIA request. In addition, the FBI found no information indicating responsive records would likely reside in any other location. Thus, the FBI has complied with its obligations under the FOIA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A-B attached hereto are true and correct copies.

Executed this 29 day of March, 2023.

Joseph E. Bender, Jr
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia