UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GUN OWNERS OF AMERICA, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE**, <br><br> Defendant. | Case No. 1:19-cv-03135 (TNM) |

**MEMORANDUM OPINION**

Plaintiff Gun Owners of America filed a Freedom of Information Act request with the Department of Justice. After the agency failed to respond, Plaintiff sued. DOJ's component agencies then searched for, and produced, responsive records. But the Federal Bureau of Investigation found no records responsive to part of Plaintiff's request. Plaintiff claims the FBI needs to search again.

Both parties have moved for summary judgment. Because DOJ has shown that it conducted a search reasonably calculated to uncover all responsive records, the Court will grant summary judgment for DOJ and deny Plaintiff's cross-motion. The Court will also deny Plaintiff's request for limited discovery.

I.

DOJ collects basic information on each visitor to its website. This information includes the internet domain name, date and time of access, pages visited, and the visitor's IP address. *See* Decl. of Joseph Bender (Bender Decl.) ¶ 17, ECF No. 32-1. DOJ's components—the FBI,

Drug Enforcement Administration, and the Bureau of Alcohol Tobacco and Firearms—also gather this information from visitors to their websites. *See id.*

Each website contains a Privacy Policy that tells users this information will be collected. *See id.*[1] The Policy also contains a disclaimer that explains "[a]lthough the primary purpose of automatically collecting this kind of information is not to track individuals who visit this site, in certain circumstances . . . the Department may take additional steps to identify you using this information and may share this information, including your identity, with other agencies." *Id.* ¶ 3. For example, a federal agent may request this information and, with legal authorization, use the IP address to solicit internet service providers for registry and other identifying information. *See id.* ¶ 17.

Plaintiff is a nonprofit organization that "seeks to promote social welfare through informing and educating the public on and conducting activities in defense of the Second Amendment." Compl. ¶ 3, ECF No. 1. To that end, Plaintiff filed a FOIA request seeking records relating to the disclaimer found in DOJ's Privacy Policy.

Plaintiff requested:

1. Records identifying the "additional steps" the Department takes to identify visitors to its website;
2. Records describing what additional "information" is collected;
3. Records identifying the "other agencies" (including federal, state, local, and international government agencies and/or nongovernmental groups) with whom information is shared;
4. Records identifying the number of individuals about whom DOJ has collected this "information"; and
5. Records describing the purpose(s) for which this information is collected and used.

FOIA Request at 2, ECF No. 1-2. But the request specifically "d[id] not seek identifying

---

[1] The full policy as it appears on DOJ's website is reproduced at https://perma.cc/QAR7-HWCH.

records identifying specific individuals about whom DOJ has collected and/or shared such information." *Id.*

DOJ failed to respond within the statutory period, so Plaintiff sued. *See* Compl. ¶ 15. DOJ then routed Plaintiff's request to its three component law enforcement agencies. *See* Bender Decl. ¶ 6 n.1. Ultimately, the DEA produced 26 pages, the FBI produced 15 pages, and the ATF found no responsive records. *See* Pl.'s Mot. for Summ. J (Pl.'s MSJ) at 3, ECF No. 33.

After productions concluded, the parties each moved for summary judgment. DOJ submits that it complied with its obligations under FOIA. Plaintiff contends that the FBI's search about Subpart 4 of its FOIA request was inadequate. It does not contest the responses of the ATF or DEA. The parties' cross-motions are ripe for decision.

**II.**

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008) (cleaned up). But these "exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (cleaned up). So courts construe FOIA exemptions "narrowly" and review their applicability and the record de novo. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An agency is entitled to summary judgment in a FOIA case if it shows that it has conducted an adequate search for responsive records, and that each responsive record located either has been produced or is exempt from disclosure. *See Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). To

meet its burden, an agency can rely on "relatively detailed and non-conclusory" affidavits or declarations. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Most FOIA cases are decided on summary judgment. *See Evans v. BOP*, 951 F.3d 578, 584 (D.C. Cir. 2020).

### III.

### A.

The Court must decide whether the FBI conducted an adequate search in response to Subpart 4 of Plaintiff's FOIA request. To determine whether the search was adequate, the Court first determines the scope of Plaintiff's request for documents. *See Wallick v. Agric. Mkt. Serv.*, 281 F. Supp. 3d 56, 60 (D.D.C. 2017). Subpart 4 sought "[r]ecords identifying the *number of individuals* about whom DOJ has collected" additional identifying information. FOIA Request at 2 (emphasis added).

DOJ argues that Subpart 4 seeks only "records from the FBI that aggregate or track the number of individuals from whom the additional information is collected." Def.'s Mot. for Summ. J. (Def.'s MSJ) at 4, ECF No. 32. So, DOJ says, the request does not encompass records relating to individual agent requests for user information. Plaintiff disagrees. In its view, it "sought the requests themselves." Pl.'s MSJ at 8. Plaintiff thus faults DOJ for failing to search for records—in particular, emails—relating to discrete agent requests for data collected from FBI.gov users.

In resolving this dispute, the Court reviews the record de novo, including the scope of the FOIA request. *See Dillon v. DOJ*, 444 F. Supp. 3d 67, 84 (D.D.C. 2020). A FOIA requester has a duty to "reasonably describe[]" the records he seeks, 5 U.S.C. § 552(a)(3), and an agency "also has a duty to construe [the] FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71

4

F.3d 885, 890 (D.C. Cir. 1995). The question is whether the text of the request would allow a "professional employee of the agency who was familiar with the subject area of the request" to "locate the record with a reasonable amount of effort." *Truitt v. DOS*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (cleaned up).

With these principles in mind, the Court agrees with DOJ's interpretation of the scope of Plaintiff's request. Any records about an attempt to investigate a particular individual are not within the scope of Subpart 4. An email from an agent asking for user data does not constitute a "record identifying the *number of individuals* about whom" the FBI has collected information. FOIA Request at 2 (emphasis added). "An alternative reading is simply unreasonable given the language" of Plaintiff's request. *See Ctr. for Immigr. Studies v. USCIS*, 628 F. Supp. 3d 266, 274 (D.D.C. 2022). The FBI's obligation "to interpret FOIA requests liberally and reasonably does not require it to extend the meaning of the request to include" records that the requester did not seek. *Dillion*, 444 F. Supp. 3d at 84.

Plaintiff's principal response is that the FBI "understood perfectly well" that it was seeking individual record requests. Pl.'s Reply at 4, ECF No. 37. But this argument misses the mark because the FBI's duty to search is limited to "the four corners of the request." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).

*First*, Plaintiff notes that, in response to this request, DOJ's other components produced records of investigations into specific persons who have accessed various DOJ websites for allegedly nefarious purposes. *See* Pl.'s MSJ at 12; Pl.'s Reply at 4. This fails to move the needle. An agency may release "documents out of generosity rather than an obligation under FOIA." *Wallick*, 281 F. Supp. 3d at 70. That other DOJ components apparently did so and produced individual requests does not render those records responsive. Nor does the fact that

other agencies elected to make discretionary releases of non-responsive material undermine the adequacy of the FBI's response.

*Second,* Plaintiff says DOJ has already admitted that Subpart 4 encompasses records relating to discrete agent requests for user information. *See* Pl.'s Reply at 5–6. Plaintiff points to emails between counsel that it says show DOJ has changed its tune at summary judgment. In one exchange, Plaintiff suggested that the FBI focus its search on officials "who would have managed/responded to any requests coming in from the field seeking info." August 2021 Emails, ECF No. 37-2. Agency counsel replied that "[y]ou and I are on the same wavelength. That is exactly what I am looking for." *Id.*

According to Plaintiff, this exchange shows that DOJ "has been fully aware" of its desire for individual information requests. Pl.'s Reply at 6. Even if so, that is beside the point. An "agency's seeming change in its interpretation of [a] FOIA request is of little consequence when determining the scope of th[e] request." *Wallick*, 281 F. Supp. 3d at 70. This Court determines the scope of Plaintiff's request de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 97 (D.D.C. 2013). And the plain meaning of Subpart 4 indicates an interest in records that tally or count the number of users for whom DOJ has collected additional identifying data. DOJ thus reasonably concluded that records relating to specific investigative requests fall outside the scope of Plaintiff's FOIA request as drafted.

*Third*, Plaintiff asserts that the FBI's declaration "admits that any 'requests by Special Agents . . . for information on users of the FBI.gov website' would be 'in response to line-item four of the request.'" Pl.'s MSJ at 12 (quoting Bender Decl. ¶ 14). This argument is specious. Plaintiff mischaracterizes the declaration. That declaration actually states: "Furthermore, [the FBI.gov & Internet Operations Unit] stated that no centralized database exists that tracks

requests by Special Agents . . . for information on users of the FBI.gov website in response to line-item four of the request." Bender Decl. ¶ 14. All this means is that, though information in a centralized database might respond to Subpart 4, no such database exists.

Plaintiff's final argument gets full marks for creativity but ultimately fares no better. It suggests that if the FBI were to provide all the specific investigative records, then these records would, combined, approximate "the number of individuals about whom DOJ has collected" additional data. FOIA Request at 2; *see* Pl.'s MSJ at 12. True enough. But the key point here is that an agency's duty to search under FOIA goes no further than "the plain meaning of [the] request." *Dillon*, 444 F. Supp. 3d at 87. And the plain language of Subpart 4 indicates that Plaintiff wanted preexisting aggregate records, not each underlying document that would allow it to construct the record itself. FOIA does not require agencies "to divine a requester's intent." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (cleaned up).

In short, Plaintiff requested something that does not exist: FBI records that track the number of investigative requests. Although the FBI appears to have at least some of those requests themselves, and it—or Plaintiff—might count them to determine the information Plaintiff desires, Plaintiff explicitly did not request them. Plaintiff cannot now fault DOJ for failing to provide what it did not request. *See Ctr. for Immigr. Studies*, 628 F. Supp. 3d at 274 (explaining that "the agency (and the Court) reads the requests as drafted, not as the [Plaintiff] might wish they were drafted" (cleaned up)).

DOJ reasonably understood the scope of Plaintiff's FOIA request to encompass records that count the number of requests for user data made by FBI agents, rather than the requests themselves. If Plaintiff wishes to obtain such records, it must file another FOIA request.

7

**B.**

Having determined the scope of Plaintiff's FOIA request, the Court now assesses the adequacy of DOJ's search for responsive records. FOIA requires an agency to make a "good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The adequacy of an agency's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The agency may meet its burden by submitting affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *See Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). But the agency need not "set forth with meticulous documentation the details of an epic search for the requested records." *Id.* And an agency's affidavits or declarations are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (cleaned up).

To meet its burden, DOJ submitted the declaration of Joseph E. Bender, Acting Section Chief of the FBI's Record/Information Dissemination Section (RIDS). *See* Bender Decl. ¶ 1. Bender explains the steps the FBI took to search for responsive records. Bender first determined that Plaintiff's request was not searchable in the Central Records System (CRS), the main records system that the FBI searches in response to most FOIA requests. *See id.* ¶ 8. This database indexes information about individuals, organizations, and other subjects of investigative interest. *See id.* ¶ 8. And because no such subject was identified in Plaintiff's request, the FBI could not search the CRS indices in a manner that would likely yield responsive records. *See id.*

Next, Bender explains that when a request is not searchable in CRS, the FBI conducts targeted searches of the offices within the FBI that are reasonably likely to maintain responsive records. *See id.* ¶ 9. Here, RIDS first contacted the Assistant General Counsel in the Privacy and Civil Liberties Unit (PCLU) for potentially responsive records. *See id.* ¶ 11. Then, at PCLU's direction, RIDS contacted the Office of Public Affairs' (OPA) FBI.gov & Internet Operations Unit (FIOU), and the Enterprise Security Operation Center (ESOC). *See id.* ¶¶ 12–18.

FIOU responded, on behalf of OPA, that it "neither create[s] nor maintain[s] the information Plaintiff requested." *Id.* ¶ 14. It explained that "no centralized database exists that tracks requests by [agents] for information on users of the FBI.gov website." *Id.* And though data logs exist that record daily entries to the FBI's website, these logs contain only general information about website activity and do not indicate whether information was requested by a specific agent. *See id.* Such information, to the extent that it was maintained, would be located in an investigative file that would need to be identified by subject.

RIDS then sought further clarification from FIOU on how user data is collected and maintained. *See id.* ¶ 17. FIOU explained that, as stated in the Privacy Policy, the FBI.gov website collects basic information on each visitor to its website. *See id.* Within OPA, this information is used for basic web analytics for content or site improvement. *See id.* OPA will also provide this data to FBI agents on request to assist in ongoing investigations. *See id.* But there is no centralized location to request this information from FIOU. *See id.* ¶ 18. Instead, FBI personnel "can make a request via telephone, email, an Instant Message, or by simply walking to the office and asking for this information." *Id.* ¶ 17.

ESOC also came up short. It advised RIDS that it could not search for responsive information about Subpart 4 because it maintains no database or logs of records tracking agent requests for information on users of the FBI.gov website. *See id.* ¶ 15. ESOC referred RIDS to the Insider Threat Office, which responded that it did not have any information responsive to Subpart 4. *See id.* ¶ 16.

Based on Bender's detailed declaration, the Court finds that the FBI satisfied its duty under FOIA to search all files likely to contain responsive materials.[2] Plaintiff fails to offer evidence "sufficient to overcome an adequate agency affidavit." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Its specific gripes with the FBI's search all relate to the agency's decision to exclude individual user information requests from the scope of its search. And because Plaintiff did not ask for those requests, these complaints provide no basis to deny DOJ's motion for summary judgment.[3]

---

[2] Given this conclusion, the Court will deny Plaintiff's request for discovery related to the scope of DOJ's searches. *See* Pl.'s MSJ at 13–14. In FOIA actions "discovery is both rare and disfavored." *Freedom Watch v. BLM*, 220 F. Supp. 3d 65, 68 (D.D.C. 2016). Discovery is only appropriate where "[P]laintiff has made a sufficient showing that the agency acted in bad faith." *Id.* (cleaned up). It has not done so here.

[3] Though Plaintiff does not assert that DOJ failed to satisfy its duty to segregate non-exempt material, *see* 5 U.S.C. § 552(b), the Court must consider this issue anyway. *See Philips v. Dep't of the Navy*, 474 F. Supp. 3d 185, 194 n.4 (D.D.C. 2020). Based on the Bender Declaration, the Court finds that DOJ has met its obligation to segregate non-exempt from exempt information. *See* Bender Decl. ¶ 7 (explaining that the FBI withheld information on one page, pursuant to Exemption 7(E)).

## IV.

For these reasons, the Court will grant DOJ's motion for summary judgment and deny Plaintiff's cross-motion. A separate Order will issue today.


Dated: September 8, 2023                                     TREVOR N. McFADDEN, U.S.D.J.